UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-22880-JEM

**SHEHAN WIJESINHA**
individually and on behalf of all
others similarly situated,                                                **CLASS ACTION**

    Plaintiff,                                                                      **JURY TRIAL DEMANDED**

v.

**SUSAN B. ANTHONY LIST, INC.**

    Defendant.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiff Shehan Wijesinha brings this class action against Defendant Susan B. Anthony List, Inc. ("SBA List") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2. SBA List is a political group advancing pro-life laws. It is headquartered in Washington, DC.

3. Plaintiff and Class Members have no relationship with Defendant, and never provided their telephone numbers to Defendant.

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff hereby amends his complaint as a matter of course.

1

4. Rather, Defendant hired a data harvesting company known as i360 to scrape Plaintiff's and the class members' cellular telephone numbers from public voter records.

5. Then, Defendant provided the information to its outside vendors who used it transmit 203,486 automated text messages with no regard for the privacy rights of the recipients of those messages.

6. Defendant's unsolicited text messaging campaign caused Plaintiff and class members injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each text message that is in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on

information and belief, Defendant sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami, Florida.

11. SBA List is a 501(c)(4) non-profit organization with its principal office located at 1200 New Hampshire Ave NW Suite 750, Washington, DC 20036. SBA List targets Florida residents with its political messages.

## THE TCPA

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and

regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17. A defendant must demonstrate that it obtained the plaintiff's prior express consent before using an automatic dialing system to contact an individual. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

18. Lastly, with respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited [] phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

19. Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of an unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.,*

*P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

## FACTS

20.     Defendant embarked upon an intrusive automated text messaging campaign to promote its pro-life political agenda.

21.     To execute its campaign, Defendant first hired i360, a data harvesting company. i360 scraped Plaintiff's and the class members' cellular telephone numbers from public voter records.

22.     Then, Defendant provided the scraped cellular telephone numbers to Direct Technology Solutions, an IT consulting firm that contracted with Mudshare, a marketing company.

23.     Subsequently, Mudshare, at the direction of and under the control of Defendant, caused 203,486 identical text messages to be transmitted to the cellular telephone numbers of Plaintiff and the class members.

24.     Specifically, on July 13, 2018, Defendant placed, or caused to be placed, the following automated text message to Plaintiff's cellular telephone number ending in 7557 ("7557 Number"):



25.     When Plaintiff clicked on the included hyperlink, it transferred him to a video produced by and posted on YouTube by SBA List.

26. Plaintiff received the subject text within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Defendant caused 203,486 identical text messages to be placed to similarly situated individuals, many of whom reside within this judicial district.

27. At no point in time did Plaintiff provide Defendant with his express consent to be contacted by telephone using an ATDS. Nor did Plaintiff provide his telephone number to Defendant or any vendor hired by Defendant.

28. Plaintiff is the subscriber and sole user of the 7557 Number.

29. The number used by Defendant (910-96) is known as a "short code," a standard code that enables Defendant to send text messages *en masse*.

30. This short code was provided to Defendant by CDYNE Corporation ("CDYNE"), a company that hosts a text messaging platform.

31. The CDYNE platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant. The following code sample made available on CDYNE's website demonstrates the system's capacity to store telephone numbers: req.To = new string[] {"15551234567"};.

32. The CDYNE platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant. The following code sample made available on CDYNE's website demonstrates the system's capacity to dial numbers in sequential order: req.PhoneNumbers = new string[] {"17575449510", "17579510544"}.

33. The CDYNE platform has the capacity to dial numbers from a database of numbers, which capacity was in fact utilized by Defendant.

34. The CDYNE platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant. In fact, the CDYNE platform has the capacity to dial

6

300 text messages per second without any human intervention.

35.     The CDYNE platform has the capacity to schedule the time and date for future transmission of text messages, which occur without any human involvement, as demonstrated by the following code sample made available on CDYNE's website: req.ScheduledDateTime = new DateTime (2017, 10, 09, 14, 15, 0). ToUniversalTime();.

36.     Additionally, the CDYNE platform has an auto-reply function that results in the transmission of text messages to individual's cellular telephones automatically from the system, and with no human intervention. This function was in fact utilized by Defendant as evidenced by the "Reply STOP to opt out" language in the text messages sent to Plaintiff and the class members, and as further evidenced by the following screenshot:

> **STOP**
>
> You have been opted out and will receive no further messages from CDYNE Alerts, support@cdyne.com and 1-800-984-3710

37.     Defendant's unsolicited text caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text message also inconvenienced Plaintiff and caused disruption to his daily life.  Plaintiff had to stop what he was doing when he received Defendant's text message to look at the message, and attempt to determine how Defendant had obtained his telephone number and why Defendant was texting him.

## CLASS ALLEGATIONS

### PROPOSED CLASS

38. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

39. Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States (1) who, on or about July 13, 2018; (2) were sent a text message; (3) from Defendant or on Defendant's behalf; (4) to said person's cellular telephone number; (5) using the same equipment used to text Plaintiff's cellular telephone.**

40. Defendant and their employees or agents are excluded from the Class. The Class consists of approximately 203,486 individuals.

### NUMEROSITY

41. Defendant has placed automated text messages to cellular telephone numbers belonging to 203,486 individuals without their prior express consent. The members of the Class, therefore, are so numerous that joinder of all members is impracticable.

42. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records, which Defendant has in its possession and consist of individuals' names and telephone numbers

### COMMON QUESTIONS OF LAW AND FACT

43. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such text messages;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant are liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

44. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant places automated calls telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

45. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

46. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

47. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual

lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

48.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**<u>Violations of the TCPA, 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the Class)**

49.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

50.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

51.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1).

52.     Defendant – or third parties directed by Defendant – used equipment having the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, without human intervention..

53.     These text messages were sent without regard to whether Defendant had first obtained express permission from the text messaged party to make such text messages. In fact, Defendant did not

have prior express consent to text message the cell phones of Plaintiff and the other members of the putative Class when its text messages were made.

54. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency telephone text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

55. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and Class Members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls or text messages.

**WHEREFORE**, Plaintiff Shehan Wijesinha, on behalf of himself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call or text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: October 29, 2018

        Respectfully submitted,

        **IJH Law**

        */s/ Ignacio J. Hiraldo*_____
        Manuel S. Hiraldo
        Florida Bar No. 0056031
        1200 Brickell Ave Suite 1950
        Miami, FL 33131
        Email: ijhiraldo@ijhlaw.com
        Telephone: 786.496.4469
        *Counsel for Plaintiff*

        **HIRALDO P.A.**

        */s/ Manuel S. Hiraldo*_____
        Manuel S. Hiraldo
        Florida Bar No. 030380
        401 E. Las Olas Boulevard
        Suite 1400
        Ft. Lauderdale, Florida 33301
        Email: mhiraldo@hiraldolaw.com
        Telephone: 954.400.4713
        *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 29, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713