**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:18-cv-22880-JEM**

SHEHAN WIJESINHA, individually and
on behalf of all others similarly situated,

     Plaintiff,

vs.

SUSAN B. ANTHONY LIST, INC.,

     Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S AND CLASS COUNSEL'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND APPLICATION FOR SERVICE AWARD, ATTORNEYS' FEES,
AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Shehan Wijesinha ("Plaintiff") initiated this action against Defendant Susan B. Anthony List, Inc. ("SBA List" or "Defendant") (together with Plaintiff, the "Parties") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The parties negotiated a settlement on behalf of Plaintiff and a class of approximately 225,506 other individuals who received a text message from Defendant. On March 19, 2019, the Court granted Preliminary Approval of the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now respectfully seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and award of Attorneys' Fees and Expenses for Class Counsel.

## I.    INTRODUCTION

On July 13, 2018, Plaintiff received a text message from Defendant related to Defendant's political message. Defendant sent a similar text message to approximately 225,506 other individuals. Plaintiff sued alleging that the text messages were sent in violation of the TCPA and were sent without the required consent. Defendant disputed these allegations.

The Parties agreed to settle the case to avoid the risks and uncertainties associated with continued litigation. The settlement requires Defendant to make $1,017,430 available for the

benefit of the class. *See* Settlement Agreement and Release (the "Agreement" or "Settlement") attached as **<u>Exhibit A</u>**.[1]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in Section I.J of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel Attorneys' Fees and Expenses; and (7) enter Final Judgment dismissing the Case with prejudice.

## II.   <u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>

### A.   Procedural History

On July 17, 2018, Plaintiff initiated this litigation against Defendant in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [ECF No. 1]. On October 26, 2018, Defendant filed a motion to dismiss the Complaint or, in the alternative, for a stay, arguing that the TCPA is an overbroad, content-based restriction of free speech, especially as applied to the targeted, time-sensitive, minimally-intrusive political speech at issue, and that, in the alternative, the court should stay the proceedings until the Federal Communications Commission finishes its already-initiated review of the proper interpretation of the statute's definition of what constitutes an auto dialer. [ECF No. 22].

On October 29, 2018, Plaintiff filed a First Amended Complaint adding allegations regarding how the at-issue text message was sent. [ECF No. 24]. On November 9, 2018, Defendant filed a motion to dismiss the Amended Complaint or, in the alternative, for a stay, on the same grounds as its earlier motion. [ECF No. 27]. While the motion to dismiss was pending and discovery was being conducted, the Parties engaged in intensive arm's-length negotiations over multiple weeks to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. After extensive settlement negotiations sessions, including multiple emails and telephone calls, the Parties reached a settlement.

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

On March 19, 2019, the Court entered an Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class. [ECF No. 39].

### B. Summary of the Settlement Terms

The Settlement terms are detailed and defined in the Agreement. The following is a summary of the Agreement's material terms.

#### 1. The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All individuals within the United States (i) who were sent a text message (ii) on his or her cellular telephone (iii) by Mudshare or a similar service on behalf of Susan B. Anthony List, Inc. (iv) between July 9, 2018, through the date of this Agreement.

Agreement at Section I.II. Excluded from the Settlement Class are: (i) the district judge and magistrate judge presiding over this case, the judges of the United States Court of Appeals for the Eleventh Circuit, their spouses, and persons within the third degree of relationship to any of them; (2) individuals who are or were during the Class Period agents, directors, employees, officers, or servants of Defendant or of any affiliate or parent of Defendant; (3) Plaintiff's counsel and their employees, and (4) all persons who file a timely and proper request to be excluded from the Settlement Class.

#### 2. Monetary Relief

The Settlement requires Defendant to make $1,017,430 available for the benefit of the Settlement Class. In order to receive a portion of the Settlement Fund, Settlement Class members are required to complete an online or paper Claim Form. Claim Forms were mailed by U.S. Mail or by email to each Settlement Class Member, and are available at the Settlement Website. Each Settlement Class Member who timely files a valid Claim Form shall become a Settlement Class Claimant and thereafter automatically receive a Claim Settlement Payment payable by check.

Each Settlement Class Member who timely files with the Administrator a valid Claim Form shall receive a cash distribution payable by check of $5.00. Agreement, Section II.B.1. Settlement Class Claimants will be sent their Claim Settlement Payments to the address they submitted on their Claim Form within sixty (60) days following the Effective Date. Agreement, Section II.B.1.

### 3. **Class Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Case. The detailed release language is found in Section V of the Agreement.

### 4. **Settlement Notice**

Class Notice was designed to provide the best notice practicable, and was tailored to take advantage of the available information Defendant had about Settlement Class members. Class Notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Case, the terms of the Settlement, Class Counsel's application for an award of Attorneys' Fees and Expenses, the request for the Service Award for the Class Representative, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Ignacio Hiraldo, dated July 2, 2019, attached hereto as **Exhibit B**, at ¶ 2. Class Notice constituted sufficient notice to all persons entitled to notice of the Settlement, and satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 5. **Service Award**

Class Counsel are entitled to request, and Defendant will not oppose, a Service Award of $2,500 for the Class Representative. Agreement, Section II.D.  The Service Award will compensate Class Representative for his time and effort in the Case, and for the risks he undertook in prosecuting the Case against Defendant.

### 6. **Attorneys' Fees and Costs**

Class Counsel are entitled to request, and Defendant will not oppose, an award of Attorneys' Fees and Expenses of up to $225,000. Agreement, Section II.D.2. 3.   The   Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement.  Hiraldo Decl. at ¶ 3. The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

### C.    Argument

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as

well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

   1. <u>**Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.**</u>

   The Class Notice consisted of four components: (1) Mail Notice, (2) Long-Form Notice, (3) a Settlement Website, and (4) the creation of a telephone hotline. Agreement, Section III.B.2-5. As part of Mail Notice, the Administrator first attempted to send notice of the Settlement by email to all Settlement Class Members for whom Defendant had emails available.  Agreement, Section III.B.2.  In the event email addresses were not available or if an email was returned undeliverable, then the Administrator utilized U.S. Mail to send direct postcard notice to all remaining Settlement Class Members.  Agreement, Section III.B.2.

   Each facet of Class Notice was timely and properly accomplished. The Administrator received data from Defendant that identified a combination of names, last known addresses, and some emails of 225,506 identifiable Settlement Class Members. *See* Declaration of Gio Santiago ("Santiago Decl."), dated June 25, 2019, attached hereto as **<u>Exhibit C</u>**, at ¶ 2. Prior to sending out Mail Notice, the Administrator formatted the data for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database ("NCOA") **t**o update any addresses on file. *Id.* A total of 224,952 addresses were found and updated via NCOA. *Id.*  The Administrator sent notice by email to 130,979 Settlement Class Members, *id.* ¶ 6, and sent notice by mailed postcard to 93,973 Settlement Class Members. *Id.* at ¶¶ 3.

   The Administrator also established the Settlement Website, www.SBATCPAsettlement.com, which went live on May 13, 2019. *Id.* at ¶ 7. The Long Form Notice, along with other key pleadings, have been and will continue to be available on the

Settlement Website or upon request to the Administrator, to enable Settlement Class Members to obtain detailed information about the Case and the Settlement. *Id.* In addition, a toll-free number, 1-888-683-1099, was established. *Id.* at ¶ 8. By calling the toll-free number, Settlement Class Members are able to obtain information about the Settlement, request a Class Notice, and/or seek assistance from a live operator during regular business hours. *Id.*

The Court-approved Class Notice satisfied Due Process requirements because it described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Class Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class Members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek an award of Attorneys' Fees and Expenses of up to $225,000, and a Service Award for the Class Representative of up to $2,500. Hence, Settlement Class Members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of June 25, 2019, the Administrator had received ***no objections*** to the Settlement had been filed and only six opt outs. Santiago Decl. at ¶¶ 10; 11. The deadline for opting-out of the Settlement and for submission of objections was June 19, 2019. *See* Preliminary Approval Order, at pg. 11.

## 2.   <u>The Settlement Should Be Approved as Fair, Adequate, and Reasonable</u>.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam &*

*Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

    (1)    the existence of fraud or collusion behind the settlement;

    (2)    the complexity, expense, and likely duration of the litigation;

    (3)    the stage of the proceedings and the amount of discovery completed;

    (4)    the probability of the plaintiffs' success on the merits;

    (5)    the range of possible recovery; and

    (6)    the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate, and reasonable.

### a. There Was No Fraud or Collusion.

The contested nature of the proceedings in this Case demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in extensive arm's-length negotiations in order to reach a class-wide resolution. Hiraldo Decl. ¶ 4; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses in this Case are complex; recovery by any means other than this Settlement would require additional years of litigation. *See United States v. Glens Falls*

*Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c.   The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted discovery. Hiraldo Decl. ¶ 4. Specifically, Class Counsel reviewed numerous pages of documents and electronic data. Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Case proceeded to judgment on a class-wide basis. Hiraldo Decl. ¶ 6.

### d.   Plaintiff and the Settlement Class Still Faced Significant Obstacles to Prevailing in this Case.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Class Counsel believes that Plaintiff had a strong case against Defendant. Hiraldo Decl. ¶ 7. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. *Id*. This Case involved several major litigation risks that loomed in the absence of settlement, including, but not limited to, a motion to dismiss (including substantial First Amendment arguments), class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id*. Notably, the likely crux of Defendant's intended motion for summary judgment was that the software Defendant used to transmit text messages was not an autodialer as defined by the TCPA, and therefore, Defendant could not be held liable under the TCPA for the text messages received by Plaintiff and members of the class.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Hiraldo Decl. ¶ 8. The uncertainties and delays from this process would have been significant. *Id*.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-cv-30093, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### e. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.   Further, the Court is not charged with choosing the best payment structure or with deciding if a claims-made structure is absolutely necessary, only with determining whether the settlement presented is fair, reasonable, and adequate given the inherent risks and expense of

further litigation. *See Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315 at *41 (S.D. Fla. April 13, 2016; *see, e.g., Casey v. Citibank, N.A.,* No. 13-cv-820, 2014 U.S. Dist. LEXIS 156553, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) (claims-made structure fair, reasonable, and adequate and "[t]he Court does not have the authority to impose a preferred payment structure upon the settling parties"). "While a claims-made structure does not guarantee an award to all class members, it does tend to maximize the opportunity available to each class member." *Braynen v. Nationstar Mortg., LLC,* No. 14-cv- 20726, 2015 U.S. Dist. LEXIS 151744, 2015 WL 6872519, at *14 (S.D. Fla. Nov. 9, 2015).

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Hiraldo Decl. ¶ 8. Each Settlement Class Claimant who opted to participate in the settlement will receive $5.00. Settlement Class Members can continue to submit Claim Forms up and through fifteen days after the Final Approval Hearing. Pursuant to the TCPA, each injured Settlement Class Member could have received $500.00 for each violative message received upon a successful verdict at trial, but such a result was very uncertain and would have required years of litigation. Further, based on information obtained by Plaintiff during the discovery process, it is clear that Defendant (a charitable organization with a limited budget and resources) is unable to financially afford $500.00 per violation.  *See* Declaration of Jennifer Gross ("Gross Decl."), attached hereto as **Exhibit D.**

This Settlement provides an extremely fair and reasonable recovery to Settlement Class Members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Hiraldo Decl. ¶ 9. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member.); *Wilkins v. HSBC Bank Nevada, N.A.*, 2015 U.S. Dist. LEXIS 23869, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving settlement of $2.95 per class member).

### f.  The Opinions of Plaintiff, Class Counsel, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Hiraldo Decl. ¶ 11. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud,

collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, as not a single objection was filed to date. Hiraldo Decl. ¶ 11. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.  The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### a.  Standing

As a preliminary matter, Plaintiff respectfully submits that he has standing to bring his claim under the TCPA. "In order to establish Article III standing to bring a suit, a plaintiff has the burden to show that he '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mohamed v. Off Lease Only, Inc.*, No. 15-cv-23352-MGC, 2017 U.S. Dist. LEXIS 41023, at *2-3 (S.D. Fla. Mar. 22, 2017) (quoting *Spokeo , Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "A plaintiff attains an injury in fact when he 'suffer[s] an invasion of a legally protected interest that is concrete and particularized[,] and actual or imminent, not conjectural or hypothetical.'" *Id.* at *3.

Most recently, the Eleventh Circuit addressed standing in the context of a claim under the Fair and Accurate Credit Transactions Act ("FACTA"), holding that the plaintiff had standing as a result of the defendant's printing of a credit card receipt that showed the card number's first six and last four digits. *Muransky v. Godiva Chocolatier, Inc.*, Nos. 16-cv-16486, 16-16783, 2019 U.S. App. LEXIS 11630, at *3 (11th Cir. Apr. 22, 2019). The Eleventh Circuit noted that "a plaintiff is not required to demonstrate the merits of his case in order to establish his standing to sue." *Id.* at *12 (citing *Pedro v Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017)). Next, the Eleventh Circuit noted that even after "*Spokeo* as before, 'intangible' injuries…may satisfy Article

III's concreteness requirement," and that "*Spokeo* made no change to the rule that 'a small injury, 'an identifiable trifle,' is sufficient to confer standing.'" *Muransky*, 2019 U.S. App. LEXIS 11630, at *15 (citing *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973))). Ultimately, in holding that the plaintiff had standing, the Eleventh Circuit concluded that "where Congress elevates the risk of harm to a concrete interest to the status of a concrete injury, the risk need be no more than an 'identifiable trifle' to be concrete." *Muransky*, 2019 U.S. App. LEXIS 11630, at *117 (quoting *Billups*, 554 F.3d at 1351).

Here, Plaintiff has standing under the TCPA to bring his claim. The TCPA is a "consumer protection statute[] that confer[s] on [P]laintiff[] the right to be free from certain harassing and privacy-invading conduct." *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *see also Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664, 666 (11th Cir. 2018) ("Congress provided [Plaintiff] that right through the TCPA, and she had that right (and could assert it through litigation against [Defendant]…") (citing the TCPA). This includes being free from "certain prohibited calls." *Tillman v. Ally Fin. Inc.*, No. 16-cv-313, 2017 U.S. Dist. LEXIS 71919, at *16 (M.D. Fla. May 11, 2017) (finding that receipt of such prohibited calls "is an injury that Congress has elevated to the status of a legally cognizable injury through the TCPA"); *Manno*, 289 F.R.D. at 682 (holding "[plaintiff] has alleged [d]efendants' conduct violated [the TCPA], and that is enough to confer upon him standing under Article III").

The injury alleged by Plaintiff here is particularized. Indeed, Plaintiff received a prohibited call from Defendant on his cell phone without his consent, and, thus, he was affected in a "personal and individual way." *Mohamed*, 2017 U.S. Dist. LEXIS 41023, at *3. This injury, even if construed as intangible, is also concrete. *Id.* Again, as held by the Eleventh Circuit, "'where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights.'" *Eisenband v. Schumacher Auto., Inc.*, No. 18-cv-80911, 2018 U.S. Dist. LEXIS 181272, at *3 (S.D. Fla. Oct. 22, 2018) (Bloom, J.) (quoting *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (quoting *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015))). "The Eleventh Circuit, pre- and post-*Spokeo*, has held that the TCPA 'creates such a cognizable right.'" *Id.* (citing *Palm Beach Golf*, 781 F.3d at 1251).

### b.  Certification under Rule 23(a)

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied here because the Settlement Class consists of approximately 225,506 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's text messaging – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Settlement Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class Members because he received a text message and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests

antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emps. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). While Defendant undoubtedly would disagree in a litigated setting, Plaintiff believes that it satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.     APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for Plaintiff as the Class Representative in the amount of $2,500. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Case, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Case, including submitting to interviews with Class Counsel, and reviewing all material filings, which included reviewing and approving the Agreement.  Hiraldo Decl. ¶ 13.

The Service Award of $2,500 is less than 0.003% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement). The Service Award requested here is therefore reasonable.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Class Notice, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of Attorneys' Fees and Expenses in the amount of $225,000, which represents 22.1% of the Settlement Fund. Hiraldo Decl. ¶ 14.  The requested award of Attorneys' Fees and Expenses is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested award of Attorneys' Fees and Expenses is appropriate, fair, and reasonable, and respectfully requests that it be approved by the Court.

### A.    The Law Awards Class Counsel Attorneys' Fees and Expenses from the Common Settlement Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those

who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-cv-60749, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (noting the attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1) the time and labor required;

(2) the novelty and difficulty of the relevant questions;

(3) the skill required to properly carry out the legal services;

(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7)     time limitations imposed by the clients or the circumstances;

(8)     the results obtained, including the amount recovered for the Clients;

(9)     the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and the length of the professional relationship with the clients; and

(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1. <u>The Claims Against Defendant Required Substantial Time and Labor</u>.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Hiraldo Decl. ¶ 15. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 16. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 17. Time and resources were also dedicated to conducting discovery. *Id.* at ¶ 18.

Settlement negotiations consumed further time and resources, which also required substantial preparation and document review. Hiraldo Decl. ¶ 19. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. All of this work consumed a substantial amount of Class Counsel's time. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Hiraldo Decl. ¶ 20. The time and resources devoted to this Case readily justify the requested award of Attorneys' Fees and Expenses.

### 2. __The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys__.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Case required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues and litigating the novel issues of whether the  TCPA is constitutional as applied here and whether the software used to make the calls was an autodialer, as defined by the TCPA. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Hiraldo Decl. ¶ 21.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries. Hiraldo Decl. ¶ 22; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. __Class Counsel Achieved a Successful Result__.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit of $5.00. Hiraldo Decl. ¶ 23.

### 4. __The Claims Presented Serious Risk__.

The Settlement is particularly noteworthy given the combined litigation risks. Hiraldo Decl. ¶ 24. As discussed, Defendant raised substantial and meritorious defenses. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is

simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Case was risky from the outset. Hiraldo Decl. ¶ 25. The Settlement Fund obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class, defeat the First Amendment challenges presented by the Defendant, a charitable organization, and then establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement, especially the risk of being unable to collect anything from this charitable organization, with its modest funds, even assuming that Plaintiff could have navigated all of the hurdles standing in the way of an uncertain recovery. Hiraldo Decl. ¶ 26.

### 5.   <u>Class Counsel Assumed Considerable Risk to Pursue This Case on a Pure Contingency Basis.</u>

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Hiraldo Decl. ¶ 27. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Hiraldo Decl. ¶ 28. The progress of the Case to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Case on a contingency fee basis. Despite Class Counsel's effort in litigating this Case, Class Counsel remain completely uncompensated for the time invested in the Case, in addition to the expenses we advanced. Hiraldo Decl. ¶ 28. There can be no dispute that this Case entailed substantial risk of nonpayment for Class Counsel.

### 6.  **The Requested Fee Comports with Fees Awarded in Similar Cases**.

Counsel's requested award of Attorneys' Fees and Expenses of $225,000 (or 22.1% of the Settlement Fund) is well within the range of fees typically awarded in similar cases. Hiraldo Decl. ¶ 30. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I. See Legg v. Laboratory Corp. of Am.*, No. 14-cv-61543-RLR, D.E. 227 at 7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million fund was justified); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide— roughly one-third.") (citing circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal 40% of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-cv-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000 settlement fund).

Consequently, the award of Attorneys' Fees and Expenses requested here, which is well below the benchmarks in the cases cited above, is appropriate and should be awarded.

## V.    <u>CONCLUSION</u>

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **<u>Exhibit E</u>**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in Section I.J of the Agreement; (5) approve the requested Service Award in the amount of $2,500; (6) award Class Counsel Attorneys' Fees and Expenses in the amount of $225,000; and (7) enter Final Judgment dismissing the Case with prejudice.

## <u>CERTIFICATE OF GOOD FAITH CONFERRAL</u>

The undersigned attorney, in compliance with S.D. Local Rule 7.1(a)(3), certifies that the movant has conferred with counsel for Defendants, and that Defendants do not oppose the relief sought.

Dated: July 2, 2019

Respectfully Submitted By:

  */s/ Ignacio J. Hiraldo*

| | |
|---|---|
| **IJH LAW** | **SHAMIS & GENTILE, P.A.** |
| Ignacio J. Hiraldo, Esq. | Andrew J. Shamis, Esq. |
| FL Bar No. 0056031 | Florida Bar No. 101754 |
| ijhiraldo@ijhlaw.com | ashamis@shamisgentile.com |
| 1200 Brickell Ave Suite 1950 | 14 NE 1st Avenue, Suite 400 |
| Miami, FL 33131 | Miami, Florida 33132 |
| Tel: (786) 496-4469 | Tel: (305) 479-2299 |
| | |
| **EDELSBERG LAW, P.A.** | **HIRALDO P.A.** |
| Scott Edelsberg, Esq. | Manuel S. Hiraldo, Esq. |
| Florida Bar No. 0100537 | Florida Bar No. 030380 |
| scott@edelsberglaw.com | mhiraldo@hiraldolaw.com |
| 2875 NE 191st Street, Suite 703 | 401 E. Las Olas Blvd., Suite 1400 |
| Aventura, FL 33180 | Ft. Lauderdale, Florida 33301 |
| Tel: (305) 975-3320 | Tel: (954) 400-4713 |
| | |
| *Counsel for Plaintiff and the Class* | *Counsel for Plaintiff and the Class* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

**IJH Law**

/s/ Ignacio J. Hiraldo_____
Ignacio J. Hiraldo
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469
Counsel for Plaintiff